1  GRADSTEIN & MARZANO, P.C.
2  HENRY GRADSTEIN (State Bar No. 89747)
   hgradstein@gradstein.com
3  MARYANN R. MARZANO (State Bar No. 96867)
   mmarzano@gradstein.com
4  ROBERT E. ALLEN (State Bar No. 166589)
5  rallen@gradstein.com
6  6310 San Vicente Blvd., Suite 510
   Los Angeles, California 90048
7  Telephone: 323-776-3100
8  Facsimile: 323-931-4990

9  Attorneys for Plaintiff
   AIMEE MANN
10

11

12         **UNITED STATES DISTRICT COURT**

13      **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14              **WESTERN DIVISION**

15  AIMEE MANN, an individual,          Case No.  CV13- 5269 GHK (FFMx)

16            Plaintiff,                **COMPLAINT FOR:**

17       v.                            **(1) DIRECT COPYRIGHT
                                            INFRINGEMENT;**
18  MEDIANET DIGITAL, INC., a          **(2) CONTRIBUTORY
    Delaware corporation; and DOES 1       COPYRIGHT
19  through 10,                            INFRINGEMENT;**
20            Defendants.              **(3) VICARIOUS COPYRIGHT
                                            INFRINGEMENT;**
21                                     **(4) INDUCING COPYRIGHT
                                            INFRINGEMENT; and**
22                                     **(5) RESCISSION**

23                                     **DEMAND FOR TRIAL BY JURY**
24

25

26

27

28

FILED
CLERK, U.S. DISTRICT COURT
JUL 2 2 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD., SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1       Plaintiff AIMEE MANN ("Plaintiff") alleges against Defendant MEDIANET

2   DIGITAL, INC. (MediaNet) and Does 1-10, as follows:

3   **NATURE OF THE ACTION**

4       1.    Section 106 of the Copyright Act provides the owner of a copyrighted

5   musical work with the exclusive rights to reproduce and distribute and to authorize

6   the reproduction and distribution of the music work in "phonorecords" (*i.e.*, audio-

7   only copies).  17 U.S.C. §§ 106(1), 106(3).  These rights are commonly referred to

8   together as "mechanical" rights, a term dating back to the period when music

9   recordings were "mechanically" (rather than digitally) reproduced.

10      2.    A party interested in reproducing and distributing musical works in

11  phonorecords can enter into a voluntary license with the copyright owners on terms

12  such parties negotiate.

13      3.    Alternatively, under certain circumstances, such party can obtain a

14  license under the compulsory license provisions embodied in Section 115 of the

15  Copyright Act.  17 U.S.C. § 115.  Under Section 115, once the copyright owner

16  authorizes the first public distribution of a musical composition, a statutory license

17  is available to others to reproduce and distribute the work to the public, provided

18  they comply with the provisions of Section 115 requiring notice of use and

19  accounting and payment of royalties to the copyright owner.

20      4.    In 1995, Congress enacted the Digital Performance Right in Sound

21  Recordings Act ("DPRA"), which amended Section 115 to clarify and confirm the

22  rights of reproduction and distribution for sound recordings and musical

23  compositions in the digital age.  In the DPRA, Congress recognized that a

24  phonorecord of a musical work could be digitally reproduced and transmitted, and

25  that copyright owners should be compensated for those activities.  Thus, Section 115

26  was amended to include a definition of "digital phonorecord delivery" ("DPD") as

27  "each individual delivery of a phonorecord by digital transmission of a sound

28  recording which results in a specifically identifiable reproduction by or for any

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD., SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1

1  transmission recipient of a phonorecord of that sound recording, regardless of

2  whether the digital transmission is also a public performance of the sound recording

3  or any nondramatic musical work embodied therein." 17 U.S.C. § 115(d).

4  Accordingly, the reproduction and distribution of musical works in the form of

5  DPDs is subject to licensing and payment of royalties under Section 115.

6  ## JURISDICTION AND VENUE

7      5.    The Court has subject matter jurisdiction over the claims asserted in this

8  action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338 as such arise under the

9  copyright laws of the United States, 17 U.S.C. § 101, *et seq.*

10     6.    Venue of this action is proper in this District pursuant to 28 U.S.C. §§

11  1391(b) and 1400(a) as a substantial part of the events giving rise to the claim

12  occurred in this District.

13  ## THE PARTIES

14     7.    Plaintiff is an individual who is a citizen and resident of the State of

15  California, County of Los Angeles, doing business as Aimee Mann.

16     8.    Upon information and belief, Defendant MediaNet is a Delaware

17  corporation that has its principal place of business in New York, New York.

18     9.    The true names and capacities of the Defendants named herein as Does 1

19  through 10, inclusive, are unknown to Plaintiff who therefore sues said Defendants

20  by such fictitious names.  Plaintiff will amend this Complaint to allege their true

21  names and capacities when such have been ascertained.  Upon information and

22  belief, each of the fictitiously named Defendants herein is responsible in some

23  manner for the occurrences herein alleged, and Plaintiff's injuries as herein alleged

24  were proximately caused by such Defendants' acts or omissions.

25     10.   Plaintiff is informed and believes, and on that basis alleges, that at all

26  times herein mentioned, Does 1-10 were the co-conspirators, licensees, retail

27  distributors, agents and/or employees of MediaNet in committing copyright

28  infringement as alleged below.  In committing the acts described below, MediaNet

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD., SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

2

1  and each Doe Defendant was acting within the course and scope of such conspiracy,

2  license, retail distribution, agency and/or employment, and with the knowledge,

3  consent and ratification of each of the other Defendants.

### FACTS COMMON TO ALL CLAIMS

#### MediaNet

6      11.   MediaNet provides music content and a technology platform to enable

7  its business partners to offer their own branded digital music services to consumers.

8  MediaNet's music service (the "Service") offers its business partners access to

9  songs in the form of:  (a) limited downloads (generally defined as the distribution of

10  a digital file of a sound recording to a user's local storage device [*e.g.*, the hard

11  drive of a user's computer or portable device] that is non-permanent, either for a

12  limited time or for a limited number of plays); (b) interactive streams (generally

13  defined as the on demand digital transmissions of sound recordings at the specific

14  request of the end user in order to allow the end user to listen to a recording or a

15  playlist contemporaneously with the user's request using so-called streaming

16  technology); and (c) non-interactive streams (generally defined as not on demand

17  real time digital transmissions of sound recordings using so-called streaming

18  technology, such as internet radio).

19      12.   MediaNet further allows users of its corporate website (located at

20  www.mndigital.com) (the "Website") to stream up to thirty (30) seconds of each

21  master recording and to purchase DPDs (*i.e.*, permanent digital copies of recorded

22  music) directly from MediaNet for a price between $0.99 and $1.29 (users can also

23  purchase entire albums digitally directly from MediaNet).

24      13.   In addition to making streams and DPDs available through the Service

25  and Website, MediaNet has made server copies of the millions of musical works in

26  its library to facilitate their delivery to end users.  The server copies of copyrighted

27  musical works reproduced, maintained and/or distributed by MediaNet to operate its

28  Music Service also require license authority from the copyright owners.

GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd, Suite 510
Los Angeles, California 90048
Telephone: 323-776-3100

COMPLAINT

14. In order to lawfully transmit, perform, reproduce and distribute any sound recording of any musical work via interactive streams, limited downloads or DPDs, MediaNet must have first obtained not only a license for each individual sound recording from its owner(s), but also a separate license for the underlying musical composition that is embodied in each separate sound recording from the copyright owner of such musical composition (the "Musical Composition Licenses").

15. Additionally, in order for any of the Service customers to lawfully transmit, perform, reproduce and distribute any sound recording of any musical work via interactive streams, limited downloads or DPDs, such Musical Composition Licenses must have been assignable to third parties.

16. MediaNet could have obtained the Musical Composition Licenses either by a voluntary license (*i.e.*, with the consent of the copyright holder) or by a compulsory license in accordance with all of the terms of Section 115 of the Copyright Act. However, pursuant to Section 115, failure to serve or file the notice required prior to distribution forecloses the possibility of a compulsory license and, in the absence of a voluntary license, renders the making and distribution of phonorecords actionable as acts of copyright infringement. 17 U.S.C. § 115(b)(2).

**Plaintiff**

17. Plaintiff is the exclusive worldwide owner and administrator of all musical compositions, to the extent written by Plaintiff, specified on the attached Exhibit A (the "Compositions"). (A true and correct copy thereof is attached hereto as Exhibit A and incorporated herein by reference.)

18. MediaNet (formerly known as MusicNet, Inc.) entered into a license agreement dated as of December 5, 2003 with Plaintiff d/b/a Aimee Mann (the "License Agreement"). (A true and correct copy of the License Agreement is attached collectively hereto as Exhibit B and incorporated herein by reference).

/ / /

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD., SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

COMPLAINT

19.   Plaintiff timely and fully performed all conditions, covenants and promises to be performed on the part of Plaintiff under the License Agreement.

20.   Pursuant to paragraph 5 of the License Agreement, the term of the License Agreement commenced on December 5, 2003 and ended on December 4, 2006, with automatic two (2) year extensions (each, a "Renewal Period") unless terminated by either party "upon written notice of intention to terminate at least ninety (90) days prior to the end of the [initial period of the] Term or any Renewal Period."

21.   Plaintiff's representative, Leslie Wallake ("Wallake"), sent to MediaNet written notice of Plaintiff's intention to terminate the License Agreement on February 10, 2005 (the "Termination Notice").  (A true and correct copy of the Termination Notice is attached hereto as Exhibit C and incorporated herein by reference).

22.   The Termination Notice caused the term of the License Agreement to terminate on December 4, 2006 (the "Termination Date") pursuant to the terms of paragraph 5 of the License Agreement.

23.   Additionally, MediaNet never sent to Plaintiff written notice at least fifteen (15) days and not more than thirty (30) days prior to the commencement of any Renewal Period, calling Plaintiff's attention to the existence of an auto-renewal provision in the License Agreement in accordance with New York General Obligations Laws §§ 5-901 and 5-903, making such auto-renewal of the term of the License Agreement unenforceable.

24.   Despite having received the Termination Notice, and despite the unenforceability of the auto-renewal provisions in the License Agreement, MediaNet continued after the Termination Date to transmit, perform, reproduce and distribute the Compositions as part of MediaNet's service, despite having no right or license to do so.

/ / /

COMPLAINT

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD., SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

## FIRST CLAIM FOR RELIEF

### (For Direct Copyright Infringement Against all Defendants)

25.   Plaintiff hereby incorporates the allegations set forth above in paragraphs 1 through 24, above, as though fully set forth herein.

26.   MediaNet's unauthorized reproduction, performance, distribution or other exploitation of the Compositions in its Service after the Termination Date, including in the form of DPDs, infringes Plaintiff's exclusive rights of reproduction and distribution in such works under the Copyright Act, 17 U.S.C. § 101, *et seq.*

27.   Each unauthorized reproduction and/or distribution of a Composition constitutes a separate and distinct act of infringement.

28.   MediaNet's conduct has been and continues to be intentional, willful and with full knowledge of Plaintiff's copyrights in the Compositions and the infringement thereof.

29.   The foregoing acts constitute direct infringement of Plaintiff's Compositions.

30.   Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of MediaNet's direct infringement of Plaintiff's copyrights, Plaintiffs are entitled to recover up to $150,000 in statutory damages for each Composition infringed. Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to her actual damages, including MediaNet's profits from infringement, as will be proven at trial.

31.   Plaintiff is also entitled to recover her attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

32.   MediaNet is causing, and unless enjoined by the Court, will continue to cause, Plaintiff irreparable harm for which Plaintiff has no adequate remedy at law. Plaintiff is entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of her Compositions and an order under 17 U.S.C. § 503 directing the

/ / /

COMPLAINT

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

1  impoundment, destruction or other reasonable disposition of all infringing

2  phonorecords and copies of such Compositions.

3  **SECOND CLAIM FOR RELIEF**

4  **(For Contributory Copyright Infringement Against all Defendants)**

5      33.   Plaintiff hereby incorporates the allegations set forth above in

6  paragraphs 1 through 32, above, as though fully set forth herein.

7      34.   Through its conduct alleged herein, MediaNet knowingly and

8  systematically induced, caused, materially contributed to and participated in the

9  infringing reproduction and/or distribution of Plaintiff's Compositions, including in

10  the form of DPDs, by its business partners and end users.

11      35.   Each unauthorized reproduction and/or distribution of a Composition

12  constitutes a separate and distinct act of infringement.

13      36.   MediaNet's conduct has been and continues to be intentional, willful and

14  with full knowledge of Plaintiff's copyrights in the Compositions and the

15  infringement thereof.

16      37.   The foregoing acts constitute contributory infringement of Plaintiff's

17  Compositions.

18      38.   Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of

19  MediaNet's contributory infringement of Plaintiff's copyrights, Plaintiffs are

20  entitled to recover up to $150,000 in statutory damages for each Composition

21  infringed.  Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b),

22  Plaintiff shall be entitled to her actual damages, including MediaNet's profits from

23  infringement, as will be proven at trial.

24      39.   Plaintiff is also entitled to recover her attorney's fees and costs pursuant

25  to 17 U.S.C. § 505 and prejudgment interest according to law.

26      40.   MediaNet is causing, and unless enjoined by the Court, will continue to

27  cause, Plaintiff irreparable harm for which Plaintiff has no adequate remedy at law.

28  Plaintiff is entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued

7

1   infringement of her Compositions and an order under 17 U.S.C. § 503 directing the

2   impoundment, destruction or other reasonable disposition of all infringing

3   phonorecords and copies of such Compositions.

**THIRD CLAIM FOR RELIEF**

**(For Vicarious Copyright Infringement Against all Defendants)**

6       41.   Plaintiff hereby incorporates the allegations set forth above in

7   paragraphs 1 through 40, above, as though fully set forth herein.

8       42.   Through its conduct alleged herein, MediaNet has had the right and

9   ability to control the infringing reproduction and/or distribution of Plaintiff's

10   Compositions, including in the form of DPDs, by its business partners and end

11   users.

12       43.   MediaNet received and continues to receive a direct financial benefit

13   from the infringing reproduction and/or distribution of Plaintiff's Compositions,

14   including in the form of DPDs, by its business partners and end users.

15       44.   Each unauthorized reproduction and/or distribution of a Composition

16   constitutes a separate and distinct act of infringement.

17       45.   MediaNet's conduct has been and continues to be intentional, willful and

18   with full knowledge of Plaintiff's copyrights in the Compositions and the

19   infringement thereof.

20       46.   The foregoing acts constitute vicarious infringement of Plaintiff's

21   Compositions.

22       47.   Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of

23   MediaNet's vicarious infringement of Plaintiff's copyrights, Plaintiffs are entitled to

24   recover up to $150,000 in statutory damages for each Composition infringed.

25   Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall

26   be entitled to her actual damages, including MediaNet's profits from infringement,

27   as will be proven at trial.

28   / / /

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

8

48.   Plaintiff is also entitled to recover her attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

49.   MediaNet is causing, and unless enjoined by the Court, will continue to cause, Plaintiff irreparable harm for which Plaintiff has no adequate remedy at law. Plaintiff is entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of her Compositions and an order under 17 U.S.C. § 503 directing the impoundment, destruction or other reasonable disposition of all infringing phonorecords and copies of such Compositions.

## FOURTH CLAIM FOR RELIEF

### (For Inducing Copyright Infringement Against all Defendants)

50.   Plaintiff hereby incorporates the allegations set forth above in paragraphs 1 through 49, above, as though fully set forth herein.

51.   MediaNet has, through its clear expression and other affirmative steps as alleged herein, actively promoted, encouraged and induced its business partners and end users to infringe Plaintiff's Compositions.

52.   Each unauthorized reproduction and/or distribution of a Composition constitutes a separate and distinct act of infringement.

53.   MediaNet's conduct has been and continues to be intentional, willful and with full knowledge of Plaintiff's copyrights in the Compositions and the infringement thereof.

54.   The foregoing acts constitute inducing infringement of Plaintiff's Compositions.

55.   Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of MediaNet's vicarious infringement of Plaintiff's copyrights, Plaintiffs are entitled to recover up to $150,000 in statutory damages for each Composition infringed. Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff shall be entitled to her actual damages, including MediaNet's profits from infringement, as will be proven at trial.

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

9

56.   Plaintiff is also entitled to recover her attorney's fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

57.   MediaNet is causing, and unless enjoined by the Court, will continue to cause, Plaintiff irreparable harm for which Plaintiff has no adequate remedy at law. Plaintiff is entitled to an injunction under 17 U.S.C. § 502 prohibiting the continued infringement of her Compositions and an order under 17 U.S.C. § 503 directing the impoundment, destruction or other reasonable disposition of all infringing phonorecords and copies of such Compositions.

## FIFTH CLAIM FOR RELIEF

### (In the Alternative For Rescission against Defendant MediaNet)

58.   Plaintiff hereby incorporates the allegations set forth above in paragraphs 1 through 57, above, as though set forth herein.

59.   As stated above, the License Agreement terminated as of the Termination Date (December 4, 2006) as the result of the Termination Notice and as a result of MediaNet's failure to comply with New York General Obligations Laws §§ 5-901 and 5-903, making such auto-renewal of the term of the License Agreement unenforceable.

60.   As material consideration for Plaintiff entering into the License Agreement, MediaNet was to pay to Plaintiff the royalties provided in paragraph 4 of the License Agreement.

61.   As further material consideration for Plaintiff entering into the License Agreement, MediaNet was to provide detailed royalty accounting statements to Plaintiff within forty-five (45) days after the end of each calendar quarter, which accountings were to be "certified to be accurate by an officer or duly appointed representative" of MediaNet as provided in paragraph 6 of the License Agreement.

62.   As further material consideration for Plaintiff entering in the License Agreement, MediaNet was to comply with the "MFN Provision" set forth in subparagraph 4.2(d) of the License Agreement, which states "relative to any other

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

COMPLAINT

1   publishers that license mechanical royalties directly to [MediaNet], [MediaNet]

2   agrees to treat [Plaintiff] on a 'most favored nations' basis concerning [MediaNet's]

3   payment for mechanical license fees applicable to [MediaNet's] Service."

4        63.   Plaintiff is informed and believes, and on that basis alleges, that

5   MediaNet entered into, both before and after entering into the License Agreement,

6   agreements with other publishers on terms for the payment of mechanical license

7   fees that were more favorable to such other publishers than the terms contained in

8   the License Agreement.  Such more favorable terms include, without limitation, the

9   royalty payable for the reproduction of compositions, on which reproductions of

10  compositions MediaNet would account and make payment, how often MediaNet

11  would account and pay royalties, and the requirement for annual certified statements

12  of account sworn to by both an officer of MediaNet and a certified public

13  accountant.

14       64.   MediaNet failed to notify Plaintiff of such more favorable terms, failed

15  to adjust the License Agreement to incorporate such more favorable payment terms

16  and failed to account and pay to Plaintiff under the License Agreement in

17  accordance with such more favorable payment terms.

18       65.   The last royalty statement and payment that Plaintiff received from

19  MediaNet during the term of the License Agreement was dated January 4, 2006 for

20  the quarter-annual period ending September 30, 2005.

21       66.   MediaNet did not pay any royalties to Plaintiff after September 30, 2005

22  with the exception of attempting to advance $20 in March 2013 which bore no

23  relationship to the License Agreement or Section 115 of the Copyright Act and was

24  promptly returned.

25       67.   MediaNet did not provide written accounting statements to Plaintiff after

26  January 4, 2006.

27       68.   MediaNet's failure to account or pay to Plaintiff under the License

28  Agreement after December 4, 2006 and MediaNet's failure to comply with the MFN

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

11

1  Provisions after the Termination Date were consistent with the term of the License
2  Agreement expiring on the Termination Date.

3      69.   However, and in the alternative, if for any reason the term of the License
4  Agreement is deemed not to have ended on the Termination Date, then Plaintiff
5  hereby rescinds the License Agreement to the extent they continued beyond the
6  Termination Date for material failure of consideration.  MediaNet's failure to
7  account and pay to Plaintiff under either of the License Agreement, and MediaNet's
8  failure to comply with the MFN Provisions, were material failures of consideration.
9  If MediaNet's position is that the License Agreement continued after the
10 Termination Date, Plaintiff agrees to restore to MediaNet whatever value that
11 Plaintiff has received under the License Agreement since the Termination Date, if
12 any.

13     70.   Such rescission of the License Agreement provides an additional basis
14 for the allegations above that MediaNet had no license to lawfully transmit, perform,
15 reproduce and distribute the Compositions after the Termination Date and, for that
16 reason as well, all of the foregoing claims state claims for copyright infringement.

17                                **PRAYER**

18        WHEREFORE, Plaintiff prays for Judgment as follows:

19 **On the First Claim For Direct Copyright Infringement against all Defendants:**

20   1.  For an order imposing a constructive trust over those monies obtained by
21       Defendants as a result of their violation of the Copyright Act;

22   2.  For an award of statutory damages in an amount of up to $150,000 for each
23       Composition infringed according to proof at the time of trial;

24   3.  For a permanent injunction, prohibiting the continued infringement of
25       copyrighted musical works owned or controlled by Plaintiff;

26   4.  For an order directing the impoundment of other reasonable disposition of all
27       infringing phonorecords and copies of copyrighted musical works owned or
28       controlled by Plaintiff;

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

5. For Plaintiff's attorney's fees and costs.

**On the Second Claim For Contributory Infringement against all Defendants:**

1. For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

2. For an award of statutory damages in an amount of up to $150,000 for each Composition infringed according to proof at the time of trial;

3. For a permanent injunction, prohibiting the continued infringement of copyrighted musical works owned or controlled by Plaintiff;

4. For an order directing the impoundment of other reasonable disposition of all infringing phonorecords and copies of copyrighted musical works owned or controlled by Plaintiff;

5. For Plaintiff's attorney's fees and costs.

**On the Third Claim For Vicarious Infringement against all Defendants:**

1. For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

2. For an award of statutory damages in an amount of up to $150,000 for each Composition infringed according to proof at the time of trial;

3. For a permanent injunction, prohibiting the continued infringement of copyrighted musical works owned or controlled by Plaintiff;

4. For an order directing the impoundment of other reasonable disposition of all infringing phonorecords and copies of copyrighted musical works owned or controlled by Plaintiff;

5. For Plaintiff's attorney's fees and costs.

**On the Fourth Claim For Inducing Infringement against all Defendants:**

1. For an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act;

2. For an award of statutory damages in an amount of up to $150,000 for each Composition infringed according to proof at the time of trial;

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD., SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

13

3. For a permanent injunction, prohibiting the continued infringement of copyrighted musical works owned or controlled by Plaintiff;

4. For an order directing the impoundment of other reasonable disposition of all infringing phonorecords and copies of copyrighted musical works owned or controlled by Plaintiff;

5. For Plaintiff's attorney's fees and costs.

**On the Fifth Claim For Rescission against all Defendants:**

1. For a determination by the Court that the License Agreement has been rescinded and an order imposing a constructive trust over those monies obtained by Defendants as a result of their violation of the Copyright Act.

2. For an award of statutory damages in an amount of up to $150,000 for each Composition infringed according to proof at the time of trial;

3. For a permanent injunction, prohibiting the continued infringement of copyrighted musical works owned or controlled by Plaintiff;

4. For an order directing the impoundment of other reasonable disposition of all infringing phonorecords and copies of copyrighted musical works owned or controlled by Plaintiff;

5. For Plaintiff's attorney's fees and costs.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD., SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

14

**On All Claims For Relief:**

1.   For costs of suit incurred herein;

2.   For prejudgment interest at the legal rate; and

3.   For such other and further relief as the Court deems just and proper.

DATED: July 19, 2013           GRADSTEIN & MARZANO, P.C.
                                   HENRY GRADSTEIN
                                   MARYANN R. MARZANO
                                   ROBERT E. ALLEN

By:                                         
                        Maryann R. Marzano
                 Attorneys for Plaintiff AIMEE MANN

GRADSTEIN & MARZANO, P.C.
6310 SAN VICENTE BLVD, SUITE 510
LOS ANGELES, CALIFORNIA 90048
TELEPHONE: 323-776-3100

15

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff Aimee Mann demands a trial by jury of the claims alleged in this Complaint.

DATED: July 19, 2013

GRADSTEIN & MARZANO, P.C.
HENRY GRADSTEIN
MARYANN R. MARZANO
ROBERT E. ALLEN

By: _____
Maryann R. Marzano
Attorneys for Plaintiff AIMEE MANN

COMPLAINT

# EXHIBIT A

**Exhibit A**
**Page 1 of 3**

| Title | Copyright Registration No. |
|---|---|
| All Over Now | PA 0000764138 (03/26/1996) |
| Amateur | PA 0000764137 (03/26/1996) |
| At The Edge Of The World | PA 0001687202 (06/20/2008) |
| Backfire | PA 0001320937 (04/24/2006) |
| Ballantines | PA 0001841754 (07/21/2008) |
| Barfly | PA 0001829348 (12/10/2012) |
| Beautiful | PA 0001322843 (04/24/2006) |
| (Believed You Were) Lucky | PA 0000410428 (03/03/1989) |
| | PA 0000421914 (04/27/1989) |
| Borrowing Time | PA 0001841754 (07/21/2008) |
| Brother's Keeper | PA 0001829378 (12/10/2012) |
| Build That Wall | PA 0001229047 (01/27/2000) |
| | Pau 001921670 (10/25/1994) |
| | PA 0001068283 (05/11/2001) |
| Calling It Quits | PA 0000985491 (01/27/2000) |
| Calling On Mary | PA 0001381184 (12/11/2006) |
| Charmer | PA 0001829348 (12/10/2012) |
| Choice In The Matter | PA 0000764133 (03/26/1996) |
| Columbus Avenue | PA 0001841754 (07/21/2008) |
| Could've Been Anyone | PA 0000620542 (06/14/1993) |
| | PA 0000626879 (05/17/1993) |
| | PA 0000657655 (08/05/1993) |
| | Pau 001715311 (01/19/1993) |
| Crash And Burn | PA 0000415240 (03/03/1988) |
| | PA 0000421913 (04/27/1989) |
| Crazytown | PA 0001829348 (12/10/2012) |
| Dear John | PA 0001322843 (04/24/2006) |
| Deathly | PA 0001229048 (01/27/2000) |
| Disappeared | PA 0001829348 (12/10/2012) |
| Do It Again | PA 0000827859 (12/05/1996) |
| Driving Sideways | PA 0001229049 (01/27/2000) |
| | PA 0001027094 (05/25/2000) |
| Fall Of The World's Own Optimist, The | PA 0000985493 (01/27/2000) |
| Fifty Years After The Fair | PA 0000620540 (06/14/1993) |
| Fighting The Stall | PA 0001322844 (04/24/2006) |
| Forty To One | PA 0000801192 (10/04/1996) |
| Fourth Of July (a/k/a 4th Of July) | PA 0000620541 (06/14/1993) |
| Frankenstein | PA 0000764141 (03/26/1996) |
| Freeway | PA 0001841754 (07/21/2008) |
| Gamma Ray | PA 0001829348 (12/10/2012) |
| Get Down To It | PA 0001346370 (11/06/2006) |
| Going Through The Motions | PA 0001339100 (04/24/2006) |
| Goodbye Caroline | PA 0001322843 (04/24/2006) |
| Goodbye, Amen | PA 0000472699 (05/21/1990) |
| Great Beyond, The | PA 0001687199 (06/20/2008) |
| Gumby | PA 0001829348 (12/10/2012) |
| Guys Like Me | PA 0001105730 (11/07/2002) |
| High On Sunday 51 | PA 0001105739 (11/07/2002) |
| How Am I Different | PA 0000985496 (01/27/2000) |
| How Can You Give Up? | PA 0000415241 (03/03/1988) |

**Exhibit A**
**Page 2 of 3**

| Title | Copyright Registration No. |
|---|---|
| Humty Dumpty | PA 0001105732 (11/07/2002) |
| I Believe She's Lying | PA 0001153329 (08/14/2003) |
| I Can't Get My Head Around It | PA 0001322843 (04/24/2006) |
| I Can't Help You Anymore | PA 0001322843 (04/24/2006) |
| I Could Hurt You Now | PA 0000620548 (06/14/1993) |
| I Know There's A Word | PA 0000620549 (06/14/1993) |
| I Should've Known | PA 0000620539 (06/14/1993) |
| I Was Thinking I Could Clean Up For Christmas | PA 0001322843 (04/24/2006) |
| Invisible Ink | PA 0001105738 (11/07/2002) |
| It Takes All Kinds | PAu 002453622 (02/07/2000) |
| It's Not | PA 0001105731 (11/07/2002) |
| It's Not Safe | PA 0000764143 (03/26/1996) |
| It's Over | PA 0001841754 (07/21/2008) |
| I've Had It | PA 0000620550 (06/14/1993) |
| J For Jules | PA 0000415237 (03/03/1989) |
| Jacob Marley's Chain | PA 0000620546 (06/14/1993) |
| Jimmy Hoffa Jokes | PAu 001827148 (09/20/1993) |
| | PAu 001827148 (09/20/1993) |
| Just Like Anyone | PA 0000985490 (01/27/2000) |
| King Of The Jailhouse | PA 0001339101 (04/24/2006) |
| Labrador | PA 0001829348 (12/10/2012) |
| Limits To Love | PA 0000470421 (03/03/1989) |
| Little Bombs | PA 0001322843 (04/24/2006) |
| Little Tornado | PA 0001841754 (07/21/2008) |
| Living A Lie | PA 0001829379 (12/10/2012) |
| Long Gone (Buddy) | PA 0000415238 (03/03/1988) |
| Long Shot | PA 0000764132 (03/26/1996) |
| Looking For Nothing | PA 0001841754 (07/21/2008) |
| Lost In Space | PA 0001105734 (11/07/2002) |
| Mea Culpa | PA 0001829352 (12/10/2012) |
| Medicine Wheel | PA 0001695551 (08/06/2008) |
| Momentum | PAu 001921671 (10/25/1994) |
| | PA 0001229046 (01/27/2000) |
| Moth, The | PA 0001105733 (11/07/2002) |
| Mr. Harris | PA 0000620547 (06/14/1993) |
| Nightmare Girl | PA 0001105719 (07/11/2002) |
| Nothing Is Good Enough | PA 0000985495 (01/27/2000) |
| Observatory | PA 0001320936 (04/24/2006) |
| Only Kidding | PAu 001921672 (10/25/1994) |
| Only One, The | PAu 001921673 (10/25/1994) |
| Other End, The (Of The Telescope) | PA 0000415239 (03/03/1988) |
| Par For The Course | PA 0000764139 (03/26/1996) |
| Pavlov's Bell | PA 0001105735 (11/07/2002) |
| Phoenix | PA 0001841754 (07/21/2008) |
| Put Me On Top | PA 0000620543 (06/14/1993) |
| Put On Some Speed | PAu 001921669 (10/25/1994) |
| Ray | PA 0000764142 (03/26/1996) |
| Real Bad News | PA 0001105737 (11/07/2002) |
| Red Flag Diver | PA 0001829348 (12/10/2012) |
| Red Vines | PA 0000985494 (01/27/2000) |

**Exhibit A**
**Page 3 of 3**

| Title | Copyright Registration No. |
|---|---|
| Rip In Heaven | PA 0000415242 (03/03/1988) |
| | PA 0000421912 (04/27/1989) |
| Satellite | PA 0000985492 (01/27/2000) |
| Save Me | PA 0001229051 (01/27/2000) |
| Say Anything | PA 0000620545 (06/14/1993) |
| She Really Wants You | PA 0001322843 (04/24/2006) |
| Shut Up | PAu 001921674 (10/25/1994) |
| Slip and Roll | PA 0001845431 (05/06/2013) |
| Soon Enough | PA 0001829377 (12/10/2012) |
| Starvin' To Death | PA 0000801194 (10/04/1996) |
| Stranger Into Starman | PA 0001841754 (07/21/2008) |
| Stupid Thing | PA 0000620544 (06/14/1993) |
| Sugarcoated (a/k/a Sugar Coated) | PA 0000764134 (03/26/1996) |
| | PA 0000780122 (03/18/1996) |
| Superball | PA 0000764136 (03/26/1996) |
| Susan | PAu 002453621 (02/07/2000) |
| Take It Back | PA 0000628902 (09/20/1993) |
| That's How I Knew This Story Would Break My Heart | PAu 002852092 (02/24/2004) |
| | PA 0001322843 (04/24/2006) |
| That's Just What You Are | PAu 001921667 (10/25/1994) |
| | PA 0000737616 (12/29/1994) |
| Thirty One Today | PA 0001841754 (07/21/2008) |
| This Is How It Goes | PA 0001105736 (11/07/2002) |
| Today's The Day | PA 0001105729 (11/07/2002) |
| True Believer | PA 0001696740 (08/06/2008) |
| | PA 0001613929 (09/08/2008) |
| Truth On My Side | PAu 001921668 (10/25/1994) |
| Video | PA 0001322843 (04/24/2006) |
| Way Back When | PA 0000620551 (06/14/1993) |
| Why Must I? | PA 0000415236 (03/03/1989) |
| Wise Up | PA 0000828653 (01/17/1997) |
| You Could Make A Killing | PA 0000764135 (03/26/1996) |
| You Do | PA 0001229050 (01/27/2000) |
| You're With Stupid Now | PA 0000764140 (03/26/1996) |

# EXHIBIT B

## LICENSE AGREEMENT

This License Agreement ("Agreement"), dated as of December 5, 2003, is made by and between **AIMEE MANN d/b/a AIMEE MANN (ASCAP)**, c/o Manatt, Phelps & Phillips, LLP with its principal offices at 1135 5W. Olympic Boulevard, Los Angeles, CA 90064 ("Publisher"), and MusicNet, Inc. with its principal offices at 220 West 42nd Street, 16th Floor, New York, NY 10036 ("Licensee") (both of the foregoing referred to as the "Parties").

WHEREAS, Licensee desires to offer to consumers, either directly or through third parties authorized by Licensee, certain digital music services that provide, among other services, digital transmissions of On-Demand Streams, Limited Downloads and Digital Phonorecord Deliveries.

WHEREAS, Publisher owns and/or controls and may hereafter own and/or control certain Musical Works (hereinafter sometimes referred to collectively as "Publisher's Catalog" as defined below); and Publisher desires to make Publisher's Catalog available to consumers by licensing such services;

NOW, THEREFORE, pursuant to 17 U.S.C. § 115 and other provisions of the United States Copyright Act, and in consideration of the mutual promises contained in this Agreement and for other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## 1. Definitions

1.1    "Digital Phonorecord Delivery" ("DPD") means such term as it is defined in 17 U.S.C. §115(d), i.e., completed digital transmissions of an entire Musical Work to a consumer where such transmission utilizes technology designed to cause the downloaded file to be available for permanent listening as recorded by the consumer.

1.2    "Effective Date" means the date on which the Service is launched in beta format.

1.3    "Licensee's Service" means a Licensee-authorized digital music service that delivers offerings to consumers (from servers located within the United States or its territories and possessions) including, but not necessarily limited to: on demand real time digital transmissions of sound recordings using so-called streaming technology ("On-Demand Streams"); and the making and distribution of sound recordings by digital transmission to local storage devices (*e.g.*, the hard drive of a user's computer or portable devices) which may include either (i) time limited or use limited downloads ("Limited Downloads") and/or (ii) digital transmissions of sound recordings of Musical Works which result in permanent DPDs.

1.4    "Musical Work" means such term as it is referred to in 17 U.S.C. § 102(2).

1.5 "Play" means either the transmission of a sound recording of a Musical Work via an On Demand Stream, or a playback of a sound recording of a Musical Work from a Limited Download, in each case of at least thirty (30) consecutive seconds in duration (excluding such Plays during free trial periods).

1.6 "Publisher's Catalog" means the entire catalog of Musical Works now or hereafter directly or indirectly owned, controlled or administered by Publisher or any affiliate of Publisher, as such catalog shall exist from time to time during the Term of this Agreement solely as to the percentages and territories indicated on the attached Schedule "A".

1.7 "Publisher's Proportionate Share" of any royalty pool hereunder means, for any accounting period hereunder, the total number of Plays (whether via On Demand Stream or Limited Download) made by subscribers of Licensee's Service consisting of Musical Works contained in Publisher's Catalog, divided by the total number of Plays (whether via On Demand Stream or Limited Download) of all Musical Works made by such subscribers.

## 2. Grant of License

2.1 Publisher hereby grants to Licensee, in connection with the operation of Licensee's Service, a nonexclusive license to use, transmit, perform, reproduce and deliver, through to the end user (including through Licensee's authorized distributors), the Musical Works contained in Publisher's Catalog, inclusive of the rights to make server reproductions, transmissions from servers, incidental reproductions in the streaming process and to facilitate local storage of the Musical Works in connection with delivery of On-Demand Streams, Limited Downloads and/or DPDs. Server reproductions made under this License to transmit On-Demand Streams, Limited Downloads and/or DPD's may also be used to make other transmissions; provided that the foregoing is without prejudice to any applicable requirement, if any, that Licensee also obtain a license for such other transmissions made using such server reproductions.

2.2 This Agreement includes the right to make, and there shall be no separate payment or accounting for the use of, promotional excerpts of sound recordings of Musical Works licensed hereunder, provided such excerpts are of no more than thirty (30) seconds duration.

2.3 Notwithstanding any other provision hereof, for all activities of Licensee that fall within the scope of Section 115 of the United States Copyright Act, and without Licensee having to further serve or file a notice of intention to obtain a compulsory license otherwise required by the Copyright Act, Licensee shall have all rights and obligations of a statutory licensee (except to the extent expressly modified or supplemented by this Agreement) for the full term of copyright for the Musical Works contained in Publisher's Catalog that are first made available by Publisher during the Term of this Agreement.

:law\agrs\musicnet
aimeemann                        - 2 -

2.4   If one or more other publishers own or control a partial interest in a Musical Work within Publisher's Catalog, this Agreement pertains only to that share that is owned and/or controlled by Publisher.  In such case, with respect to any share of the Musical Work involved that is not owned and/or controlled by Publisher, Licensee shall be responsible for securing any additional licenses to the extent (if at all) required by law and for accounting to each co-owner (or such co-owner's authorized payee) for such co-owner's share of the applicable Musical Work.

## 3.  Limitations On Rights

Any and all rights not granted or authorized by this Agreement are specifically reserved by Publisher.  Without limiting the generality of the foregoing, this license does not extend to activities not described above, including, without limitation, print or display rights, merchandising rights, adaptation (derivative work) rights except as provided in Section 115(a)(2) of the United States Copyright Act, rights to synchronize Musical Works with visual images resulting in audiovisual works, or karaoke rights, all of which rights are specifically reserved.  This Agreement does not grant to Licensee any trademark rights, or any rights to any endorsement by Publisher or any other person.

## 4.  License Fees

4.1   The license fees due to Publisher associated with Licensee's Service consist of what are commonly known as (i) "mechanical" royalties, licensable pursuant to Section 115 of the United States Copyright Act ("Section 115"), and (ii) "public performance" royalties, licensable either directly from Publisher or its affiliated performing rights organization ("PRO").

4.2   (A) Mechanical Royalties.  Upon a final non-appealable determination of applicable mechanical license rates as may be required for Licensee's Service (hereafter the "Section 115 Statutory Rate"), structured and determined through industry-wide negotiation and/or a Copyright Arbitration Royalty Panel ("CARP") proceeding pursuant to Section 115, Licensee shall pay to Publisher the Section 115 Statutory Rate for Licensee's Service in effect at the time Musical Works from Publisher's Catalog are digitally transmitted to a consumer.  If the Section 115 Statutory Rate applicable to Licensee's Service is thereafter increased, then the royalty rate hereunder shall be so increased from and after the effective date of such increase.

(a)        Until such time as there has been a final non-appealable determination of the Section 115 Statutory Rate as may be required for Licensee's Service, Licensee shall make "interim" fee payments to Publisher in accordance with subparagraph 4.2(c) below.

(b)        Within 90 days of a final non-appealable determination of the Section 115 Statutory Rate, Licensee shall make the adjustment (if any) necessary such that Publisher receives the applicable final Section 115 Statutory Rate payment for all previous quarters then completed, retroactive to the launch of

Licensee's Service.

(c)      Pending the establishment of a final, non-appealable determination of the Section 115 Statutory Rate, Licensee shall pay Publisher, for the applicable accounting period, an interim mechanical royalty fee equal to the following: (i) five percent (5%) of the amounts paid by subscribers for receipt of Licensee's Service ("Licensee's Revenues"), <u>multiplied by</u> (ii) a fraction, the numerator of which is the number of Plays of Limited Downloads and the denominator of which is the total number of Plays (whether via On Demand Stream or Limited Download) , <u>multiplied by</u> (iii) Publisher's Proportionate Share. The total amount of interim fees paid hereunder (the "Interim Section 115 Royalty") shall be applied against the final Section 115 Statutory Rate royalties owed to Publisher hereunder. If such interim fees are not fully recouped at such time, any remainder of such payments thereafter shall be applied prospectively against all undisputed amounts owed to Publisher.

(d)      Notwithstanding any other provisions of this section 4.2, relative to any other publishers that license mechanical rights directly to Licensee, Licensee agrees to treat Publisher on a "most favored nations" basis concerning Licensee's payment for mechanical license fees applicable to Licensee's Service.

(B) For the making and distribution of permanent DPDs, Licensee shall pay Publisher the statutory royalty rate under Section 115 applicable to such permanent DPDs in effect at the time such DPD is made and distributed; however, no royalty will be payable for DPDs not resulting in a specifically identifiable reproduction of the entire sound recording by or for any transmission recipient.

4.3      <u>Public Performance Royalties</u>. Licensee agrees to pay directly to Publisher, and Publisher agrees to accept, for the applicable accounting period, a public performance royalty attributable to the activities associated with Licensee's Service equal to the following: (a) five percent (5%) of Licensee's Revenues <u>multiplied by</u> (b) a fraction, the numerator of which is the number of Plays of On Demand Streams and the denominator of which is the total number of Plays (whether via On Demand Stream or Limited Download), <u>multiplied by</u> (c) Publisher's Proportionate Share. Notwithstanding the foregoing: (i) in the event the PRO with which Publisher is affiliated does not provide a mechanism for a reduction in the amount of otherwise applicable fees to account for public performance rights licensed directly by Publisher to Licensee hereunder, Licensee may elect to secure such public performance rights from the PRO with which Publisher is affiliated; and (ii) upon the timely election of Publisher as set forth below, Publisher may elect to have Licensee secure any public performance rights associated with the use of Publisher's Musical Works on Licensee's Service by obtaining a license from the PRO with which Publisher is affiliated. Any election by Publisher hereunder shall be made at the time of execution hereof or subsequently at least 60 days in advance of January 1 or July 1 of any year during the term hereof, to be applicable for at least the ensuing six-month period and any

following six-month periods.

4.4    Notwithstanding this Paragraph 4, no royalties shall be payable under this Agreement with respect to otherwise licensed Musical Works contained in Publisher's Catalog where Publisher has granted directly to a sound recording licensor a license for rights to be utilized by Licensee's Service and where such license provides for accounting and payments directly to Publisher from such sound recording licensor for uses within Licensee's Service.

4.5    In the event Publisher owns or controls less than one hundred percent (100%) of a Musical Work, Publisher's royalties as described above shall be credited with respect to such Musical Work in the same proportion as Publisher's actual percentage of ownership or control of such Musical Work, provided, however, that in the event that such actual percentage of ownership or control is unknown or unavailable to Licensee or unresolved for any reason, Licensee may calculate Publisher's proportionate royalties for the unresolved portion of a Musical Work by dividing one (1) by the total number of identified publishers of such Musical Work. For the purpose of clarifying this calculation, where Licensee has identified four (4) publishers of a Musical Work, the proportionate share of each such identified publisher with respect to the unresolved portion of the Musical Work will be deemed to be 25% ($1/4 = .25$).

4.6    The royalties required to be paid under this Agreement with respect to Limited Downloads, On Demand Streams and/or DPDs received in countries where royalties are actually paid in connection with their importation, use or receipt in such territory shall be reducible by the amount of such royalties so paid to Publisher, sub-publisher or the local collection agent.

## 5.  Term

The Term ("Term") of this Agreement commences on the Effective Date and ends three (3) years after said Effective Date and shall be automatically extended for successive periods (each a "Renewal Period") of two (2) years, unless terminated by either Party upon written notice of intention to terminate at least ninety (90) days prior to the end of the Term or any Renewal Period, whereupon this Agreement shall terminate at the end of such Term or Renewal Period, as the case may be.

## 6.  License Fee Reports, Accounting and Payment

6.1    Licensee shall issue all payments due to Publisher under this Agreement within 45 days after the end of each calendar quarter.

6.2    Simultaneously with its fee payments hereunder, including any interim fee adjustment required pursuant to Paragraph 4.2 herein, Licensee shall submit a license fee report to Publisher, with information indicating how the license fee due hereunder was calculated, including the number of Plays within Publisher's Catalog made during the period (via On-Demand Streams and/or Limited Downloads) and the total number of all Plays (via On Demand Streams and/or

:law\agrs\musicnet
aimeemann                              - 5 -

Limited Downloads) made by the Licensee's Service during the period as well as the total number of DPDs made and distributed hereunder during the period. Such license fee report shall be certified to be accurate by an officer or duly appointed representative of Licensee.

**7.     Verification of License Fee Reports and other Reports**

7.1     Publisher shall have the right, at Publisher's sole cost and expense, to examine Licensee's books and records directly relating to this Agreement, solely for the purpose of verifying the accuracy of any license fee report required by this Agreement and only as provided herein.  Publisher may exercise this right no more than once per calendar year.  Publisher may make such an examination for a particular report only once and only within three (3) years after the date any such license fee report is rendered as provided in Paragraph 6.1 above.  Publisher shall give Licensee at least thirty (30) days' written notice of its intention to conduct an examination.  Such examination shall be conducted by an independent auditor experienced in audits of companies engaged in the transmitting of music by digital means who is not being compensated on a contingent fee basis.  Any such audit shall be conducted only during Licensee's usual business hours and at a place where it keeps the books and records to be examined.  Licensee's books and records shall be kept by Licensee in accordance with Generally Accepted Accounting Principles and shall be retained for a minimum of at least three (3) years following expiration of the Term of this Agreement.

7.2     All license fee reports rendered by Licensee shall be conclusively binding upon Publisher and not subject to any objection by Publisher for any reason unless specific objection in writing, stating the basis thereof, is given to Licensee within three (3) years of the date such license fee report is rendered and an audit pursuant to Paragraph 7.1 is completed within twelve (12) months after such objection notice is given.

**8.  Breach or Default**

Subject to the provisions hereof, the failure to perform any of the material terms or conditions required by this Agreement (unless otherwise authorized or permitted by law) constitutes grounds for termination of this Agreement.  Unless this Agreement otherwise expressly provides, the Parties agree that neither Party shall be deemed to be in breach of this Agreement until and unless the breaching Party fails to cure such breach within thirty (30) days of the non-breaching Party's written notice describing the alleged breach in reasonable detail.  No waiver by either Party of full performance by either Party in any one or more instances shall be a waiver of the right to require full and complete performance of this Agreement thereafter or of the right to terminate this Agreement.

**9.  Security**

On-Demand Streams, Limited Downloads and/or DPDs made available through Licensee's Service shall conform to the governing security protocols and provisions in

:law\agrs\musicnet
aimeemann                                      - 6 -

Licensee's agreements with sound recording copyright owners or under the applicable provisions of Section 114 of the United States Copyright Act.

**10. Representations and Warranties**

10.1    Publisher represents and warrants to Licensee that it has the rights necessary to grant each and all of the rights provided for under this Agreement and that Licensee's exercise of the rights granted to it under this Agreement will not infringe on any third party's rights including, without limitation, any rights of copyright.

10.2    Licensee hereby represents and warrants that Licensee has the right and power to enter into and fully perform this Agreement and to make the commitments Licensee makes herein.

**11. Indemnities**

11.1    Licensee will at all times indemnify and hold harmless Publisher, its Affiliates and any of their respective Publishers, and any officer, director and employee of Publisher (the "Publisher Indemnitees"), from and against any and all third party claims, damages, liabilities, costs and expenses (including reasonable legal expenses and counsel fees) arising out of (a) Licensee's use of Licensee's Service (except insofar as the use of Publisher's Catalog is in accordance with the grant of rights in this Agreement); and/or (b) any breach or alleged breach by Licensee of any representation, warranty or agreement made by Licensee herein.

11.2    Publisher will at all times indemnify and hold Licensee, Licensee's Affiliates and any officer, director and employee of Licensee ("Licensee's Indemnitees") harmless from and against any and all third party claims, damages, liabilities, costs and expenses (including reasonable legal expenses and counsel fees) arising out of Publisher's breach of any representation, warranty or agreement made by Publisher herein.  Licensee shall promptly notify Publisher of any action arising out of Publisher's breach by written notice thirty (30) days prior to the commencement so that Publisher may provide a cure.

**12. Miscellaneous**

12.1    This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without giving effect to conflicts of law principles thereof.

12.2    Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provisions shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

:law\agrs\musicnet
aimeemann                        - 7 -

12.3   This Agreement and course of dealing hereunder are intended to be inadmissible in any judicial or other administrative or arbitral (including CARP) proceeding of any kind for the purposes of establishing industry-wide royalty rates, and shall not be used by either Party (or any third party to this Agreement) to support any legal or other argument in any such judicial or other proceeding.

12.4   This Agreement may be modified or amended only by a writing signed by Publisher and Licensee.

12.5   All notices and other communications between the Parties hereto shall be in writing and deemed received (i) when delivered in person; (ii) upon confirmed transmission by facsimile device; or (iii) five (5) days after deposited in U.S. mails, postage prepaid, certified or registered mail, addressed to the other Party at the address set forth above (or such other address as such other Party may supply by written notice).

12.6   This Agreement expresses the entire understanding of the Parties and supersedes all prior and contemporaneous agreements and undertakings of the Parties with respect to the subject matter hereof.

12.7   This Agreement may be executed in counterparts, each of which shall be deemed to be an original but which taken together shall constitute one agreement.

12.8   Except as otherwise expressly provided herein, this Agreement and the rights and obligations hereunder shall be assignable or transferable by either Party; provided, that such assignee must agree to assume all obligations and rights of such party under this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

Publisher: **Aimee Mann d/b/a Aimee Mann (ASCAP)**

By: _____
      An authorized signatory
      Tax ID #: 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

Licensee: **MusicNet, Inc.**

By: _____
      An authorized signatory

:law\agrs\musicnet
aimeemann                              - 8 -

Schedule A

:law\agrs\musicnet
aimeemann                              - 9 -

## SCHEDULE A

### Aimee Mann (ASCAP)

| Title | Writer(s) | Publisher(s) | Copyright Info | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| (Believed You Were) Lucky | Aimee Mann – 50% Jules Shear – 50% | Aimee Mann – 50% Music Corp. of America, Inc. – 25% Jutes Music Co. (adm. by MCA) – 25% | PA 410-428 10/18/88 | | 'Til Tuesday Everything's Different Now Epic Records #OE/OET/EK 44041 Released: Oct. 19, 1988 A-side single Epic #34/34T 08059-7 October 18, 1988 |
| | | | | | Coming Up Close: A Retrospective Epic/Legacy #EK 64944 Released: Sept. 14, 1996 |
| | | | | | 'Til Tuesday / various |
| | | | | | All About Love Sony Special Products #A28466  1997 |
| All Over Now | Aimee Mann – 100% | Aimee Mann – 100% | PA 764-138 3/26/96 | | Aimee Mann I'm With Stupid Geffen Records DGCC/D-24951 Release Date: October 1995 (UK); January 1996 (U.S.) Buy Product 2 Brief Encounters compilation Geffen 1995 |
| Amateur | Aimee Mann – 50% Jon Brion – 50% | Aimee Mann – 50% You Can't Take It With You – 50% | PA 764-137 3/26/96 | | Aimee Mann I'm With Stupid Geffen Records DGCC/D-24951 Release Date: October 1995 (UK); January 1996 (U.S.) Motion Picture Picture Perfect 20th Century Fox 1997 Motion Picture Sliding Doors Miramax 1998 |

A-1

406697341

| Title | Writer(s) | Publisher(s) | Copyright Info | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Backfire | Aimee Mann – 50%<br>Jon Brion – 50% | Aimee Mann – 50%<br>You Can't Take It With You – 50% | | SuperEgo Records | Aimee Mann "Bachelor No. 2"<br>SuperEgo Records #VVR1015872<br>Released: 2001 (U.K.)<br>Note: song not included on U.S. release |
| | | | | SuperEgo Records | Aimee Mann – Bonus CD Sampler<br>SuperEgo Records #SB 008<br>Released: August 27, 2002 |
| Build That Wall | Aimee Mann – 50%<br>Jon Brion - 50% | Aimee Mann – 50%<br>You Can't Take It With You – 50% | PAu 1-921-670<br>10/25/94<br>PA pending<br>PA 1-027-092<br>5/25/00 (arrangement)<br>(CA) PA 1-068-282/11-5-01 | Super Ego Records<br>SR Pending | Motion Picture Magnolia<br>New Line Cinema 1999<br>Aimee Mann Magnolia soundtrack album<br>Warner Bros. Records<br>#47-47583<br>Released: December 7, 1999 |
| Calling It Quits | Aimee Mann – 100% | Aimee Mann- 100% | PA 985-491<br>1-27-00 | SuperEgo Records<br>SR Pending | Aimee Mann, "Bachelor No. 2", SuperEgo, #SE001 (Limited Edition)<br>August 2, 1999 & #SE 002 May 2, 2000<br>Various/Sex, And The City Soundtrack LP<br>London/Sire 31134-2/4 May 2000<br>Aimee Mann/"Oh! From The<br>Girls"/Network America LLC/CD #<br>30328-2/1-13-04 (US & Canada) |
| Choice In The Matter | Aimee Mann – 50%<br>Jon Brion - 50% | Aimee Mann - 50%<br>You Can't Take It With You – 50% | PA 764-133<br>3/26/96 | | Aimee Mann I'm With Stupid<br>Geffen Records DGCC/D-24951<br>Release Date: October 1995 (UK); January 1996 (U.S.)<br>Promo CD 4845 1/0/96<br>CD Single (Australia) You Could Make a Killing: GEFDM 22154 6/2/96 |
| Christmas Song, The | Torme<br>Wells | Edwin H. Morris, Inc. | | SuperEgo Records<br>SR 215-041/8-31-01 | Aimee Mann/Single/SuperEgo Records #SE004/December 14, 2000<br><br>EMI/Compilation CD entitled "Santa Baby"/2002 |

A-2

4069674.1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Could've Been Anyone | Aimee Mann – 50% Jules Shear - 25% Marty Willson-Piper - 25% | Aimee Mann – 50% Geffen Again Music (admin. by Music Corp. of America Inc.) – 12.5% Juxen Music Inc. (admin. by Music Corp. of America Inc.) - 9.38% Fuzzalo Music Ltd. (admin. by Music Corp. of America Inc.) - 3.12% Tomato-Du-Plentl Music Ltd. (admin. by Leeds Music) - 25% | PA 620-542 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72187-21017-2/4 Released: 5/11/93 |
| Crash And Burn | Aimee Mann – 50% Kit Hain – 50% | Aimee Mann – 50% MCA Music Publishing – 25% Unichy Music, Inc (adm. By MCA) – 12.5% Kitus Corp. (adm. by MCA) – 12.5% | PA 415-240 03/03/89 | | Til Tuesday Everything's Different Now Epic Records #OE/OE7/EK 44041 Released: Oct. 19, 1988 All About Love  Sony Special Products #A28466   1997 |
| Deathly | Aimee Mann- 100% | Aimee Mann- 100% | PA Pending PA 1-027-093 5/25/00 (arrangement) (CA) PA 1-068-284/11-5-01 | SuperEgo Records SR Pending | Aimee Mann Magnolia soundtrack album Warner Bros. Records #42-47583 Released: December 7, 1999 Motion Picture Magnolia (New Line 1999) Aimee Mann Bachelor No. 2 SuperEgo Records SE002 May 2, 2000 |
| Do It Again | Aimee Mann - 50% Michael Hausman -50% | Aimee Mann - 50% M. Hausman Music - 50% | PA 827-859 12/6/96 | | Til Tuesday Coming Up Close: A Retrospective Epic/Legacy Records #EK/ET 64944  October 1996 Til Tuesday/Sony/(DFD)/record #064944 |

A-3

469697341

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/Copyright Info | Release Information |
|---|---|---|---|---|---|
| Driving Sideways | Aimee Mann– 50% Michael Lockwood– 50% | Aimee Mann– 50% Monoune Mosaic– 50% | PA Pending PA 1-027-094 5/25/00 (arrangement) (CA) PA 1-068-294/11-5-01 | SuperEgo Records SR Pending | Aimee Mann Magnolia soundtrack album Warner Bros. Records #42-47583 Released: December 7, 1999

Motion Picture Magnolia New Line Cinema 1999

Aimee Mann Bachelor No. 2 SuperEgo Records SE002 May 2, 2000 |
| Driving With One Hand On The Wheel | Aimee Mann – 100% | Aimee Mann – 100% | PA pending | | Aimee Mann – Int'l CD single Long Shot GEFDM 22187 11/27/95 cass. single (UK) Long Shot GEFCS 19923 3/96 CD single (UK) Long Shot GEFDM 22133 3/96 |
| Enough* | Aimee Mann – 100% | Aimee Mann – 100% Income Participation Aimee Mann – 50% New Columbia Pictures Music, Inc. – 50% | | | Motion Picture "Enough" (Columbia Pictures) released 5-24-02 |

*Note: New Columbia Pictures Music, Inc. receives 50% of the publisher's share of income solely with respect to recording made for the motion picture "Enough."

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/Copyright Info | Release Information |
|---|---|---|---|---|---|
| Fall Of The World's Own Optimist, The | Aimee Mann– 50% Elvis Costello– 50% | Aimee Mann– 50% Plangent Visions Music Ltd. – 50% | PA 985-493 1-27-00 | SuperEgo Records SR Pending | Aimee Mann, "Bachelor No. 2", SuperEgo, #SE001 (Limited Edition) August 2, 1999 & #SS 002 May 2, 2000

Elvis Costello "All This Useless Beauty" Warner Special Products #R2 74294 August 21, 2001 |

469467341

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Fifty Years After The Fair | Aimee Mann – 100% | Aimee Mann – 100% | PA 620-540 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72787-21017-2/4 Released: 5/11/93<br><br>Contemporary Rock: Grooves Warner Special Products OPCS/OPCD 1651 March 31, 1994 |
| Fighting the Stall | Aimee Mann – 100% | Aimee Mann – 100% | | SuperEgo Records | Unreleased |
| Fly | Aimee Mann – 50% Brian Stevens – 50% | Aimee Mann – 50% Brian Stevens Publisher Designee – 50% | | SuperEgo Records | Unreleased |
| Forty To One | Aimee Mann – 50% Peter Wolf – 50% | Aimee Mann – 50% Almo Music Corp o/b/o Pal-Park Music – 50% | | | Peter Wolf / Warner Reprise #46199-2/4   May 14, 1996 |
| Fourth Of July | Aimee Mann – 100% | Aimee Mann – 100% | PA 620-541 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72787-21017-2/4 Released: 5/11/93 |
| Frankenstein | Aimee Mann – 50% Jon Brion – 50% | Aimee Mann – 50% You Can't Take It With You – 50% | PA 764-141 3/25/96 | | Aimee Mann I'm With Stupid Geffen Records DGCC/D-24951 Release Date: October 1995 (UK); January 1996 (U.S.) CD single (Australia) You Could Make A Killing GEFDM 22154 6/5/96 |
| Ghost World | Aimee Mann – 100% | Aimee Mann – 100% | PA Pending | SuperEgo Records SR Pending | Aimee Mann Bachelor No. 2 SuperEgo Records SE002 May 2, 2000 |
| Goodbye, Amen | Aimee Mann – 100% | Aimee Mann – 100% | PA 292-540 06/26/86 PA 472-699 05/22/90 | | American Girls  American Girls IRS Records #IRS/IRSCIRSD 5702 Released:  Mar. 10, 1996 |

A-5

49960734.1

Page 33

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Guys Like Me | Aimee Mann – 100% | Aimee Mann – 100% | PA 1-105-730 **11/7/02 | SuperEgo Records SR 318-932 **11/7/02 | Aimee Mann "Lost In Space" SuperEgo Records #SE 007 Released: August 27, 2002 |
| High On Sunday 51 | Aimee Mann – 50% Paul Dalen – 50% | Aimee Mann – 50% Past Tense Songs (ASCAP) – 50% | PA 1-105-739 **11/7/02 | SuperEgo Records SR 318-932 **11/7/02 | Aimee Mann "Lost In Space" SuperEgo Records #SE 007 Released: August 27, 2002 |
| How Am I Different | Aimee Mann – 75% Jon Brion – 25% | Aimee Mann 75% You Can't Take It With You- 25% | PA 985-496 1-27-00 | SuperEgo Records SR Pending | Aimee Mann, "Bachelor No. 2", SuperEgo, #SE001 (Limited Edition) August 2, 1999 & #SE 002 May 2, 2000 |
| How Am I Different (Ocean Way Version) | | | | SuperEgo Records | unreleased |
| How Can You Give Up? | Aimee Mann - 66.66% Michael Hausman – 33.33% | Aimee Mann - 66.66% M. Hausman Music - 33.33% | PA 415-241 10/20/88 | | 'Til Tuesday Everything's Different Now Epic Records. #OE/OET/EK 44041 Released: Oct. 19, 1988 34/34T-68622 Feb. 1989

Sony Music Entertainment #68622 May 9, 1989 |
| Humpty Dumpty | Aimee Mann – 100% | Aimee Mann – 100% | PA 1-105-732 **11/7/02 | SuperEgo Records SR 318-932 **11/7/02 | Aimee Mann "Lost In Space" SuperEgo Records #SE 007 Released: August 27, 2002 |
| | | | | SuperEgo Records SR 318-922 **11/7/02 | Aimee Mann – Bonus CD Sampler SuperEgo Records #SE 008 Released: August 27, 2002 |
| I Believe She's Lying | Aimee Mann – 50% Jon Brion – 50% | Aimee Mann – 50% You Can't Take It With You (admin. by Eric Greenspan) – 50% | PA 1-153-329/8-14-03 | | Jon Brion "Meaningless"/self-released/ Straight To Cut-Out #0000J/2001 |
| I Could Hurt You Now | Aimee Mann – 100% | Aimee Mann – 100% | PA 620-548 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72787-21017-2/4 Released: 5/11/93 |
| I Don't Care (unfinished song) | Aimee Mann – 100% | Aimee Mann – 100% | | SuperEgo Records | unreleased |

A-5

4059673v1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| I Know There's A Word | Aimee Mann – 50% Jon Brion – 50% | Aimee Mann – 50% Lilyac Music – 25% You Can't Take It With You (admin. by Lilyac Music) – 25% | PA 620-549 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72187-21017-2/4 Released: 5/11/93 |
| I Should've Known | Aimee Mann – 100% | Aimee Mann – 100% | PA 620-539 6/14/93 | | Aimee Mann Imago Recording Co. promo CD: #IM-28047-2 DJ Released: February 1993 promo CD: #IM28048-2 DJ Released: 4/16/93 Whatever LP #72187-21017-2/4 Released: 5/1/93 Single: 72787-25032-2/4 Released: 5/31/93 CDS: 72787-25086-2/4 Released: 9/23/94 Motion Picture Whatever (Anyway Productions 1997)& soundtrack album (Tangerine Records) |
| Invisible Ink | Aimee Mann – 50% Clayton Scoble – 50% | Aimee Mann – 50% Future Pageant Winner Music (BMI) – 50% | PA 1-105-738 **1/17/02 | SuperEgo Records SR 318-932 **1/17/02 | Aimee Mann "Lost In Space" SuperEgo Records #SE 007 Released: August 27, 2002 |
| It Takes All Kinds | Aimee Mann – 50% Jon Brion – 50% | Aimee Mann – 50% You Can't Take It With You – 50% | PAu 2-453-622 2/7/00 | SuperEgo Records SR Pending | Aimee Mann Bachelor No. 2 SuperEgo Records SE002 May 2, 2000 |
| It's Not | Aimee Mann – 100% | Aimee Mann – 100% | PA 1-105-731 **1/17/02 | SuperEgo Records SR 318-932 **1/17/02 | Aimee Mann "Lost In Space" SuperEgo Records #SE 007 Released: August 27, 2002 Sonycustom made CDs sold solely over the internet for songs used in "Dawson's Creek"/January 7, 2003 |
| It's Not Going To Stop (Ocean Way Version) | | | | SuperEgo Records | unreleased |

A-7

40690734.1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| I've Had It | Aimee Mann – 100% | Aimee Mann – 100% | PA 620-550 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72787-21017-2/4 Released: 5/11/93 Single: #72787-25016-2/4 Released: 11/22/93 |
| J For Jules | Aimee Mann – 100% | Aimee Mann – 100% | PA 415-237 03/03/89 | | 'Til Tuesday Everything's Different Now Epic Records #OE/OET/EK 44041 Released: Oct. 19, 1988 Coming Up Close: A Retrospective Epic/Legacy #EK 64944 Released: Sept. 11, 1996 |
| Jacob Marley's Chain | Aimee Mann - 100% | Aimee Mann – 100% | PA 620-546 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72787-21017-2/4 Released: 5/11/93 |
| Jimmy Hoffa Jokes | Aimee Mann - 100% | Aimee Mann – 100% | PAu 1-827-148 9/20/93 | | Aimee Mann Imago Recording Co. promo CD: #IA-28047-2 DJ February 1993 |
| Just Like Anyone | Aimee Mann - 100% | Aimee Mann – 100% | PA 985-490 1-27-00 | SuperEgo Records SR Pending | Aimee Mann, "Bachelor No. 2", SuperEgo, #SE001 (Limited Edition) August 2, 1999 & #SE 002 May 2, 2000 |
| Limits To Love | Aimee Mann - 100% | Aimee Mann – 100% | PA 470-421 03/03/89 | | 'Til Tuesday Everything's Different Now Epic Records #OE/OET/EK 44041 Released: Oct. 19, 1988 B-side to (Believed You Were) Lucky single #64947 OT 08059-7 Oct. 18, 1988 Coming Up Close: A Retrospective Epic/Legacy #EK 64944 Released: Sept. 11, 1996 |

A-8

40696734.1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Long Gone (Buddy) | Aimee Mann - 66.66% Michael Hausman – 33.35% | Aimee Mann - 66.66% M. Hausman Music - 33.33% | PA 415-238 03/03/89 | | 'Til Tuesday Everything's Different Now Epic Records #OE/OET/EK 44041 Released: Oct. 19, 1988 |
| Long Shot | Aimee Mann - 100% | Aimee Mann - 100% | PA 764-132 3/26/96 | | Coming Up Close: A Retrospective Epic/Legacy #EK 64944 Released: Sept. 11, 1996<br><br>Aimee Mann I'm With Stupid Geffen Records DGCCD-24951 Release Date: October 1995 (UK); January 1996 (U.S.) CD single (international) Long Shot GEFDM 22087 11/27/95 cass. single (UK) Long Shot GEFCS 19323 3/96 CD single (UK) Long Shot GEFDM 22133 3/96 |
| Long Shot (Live Version From Ocean Way) | | | | SuperEgo Records | unreleased |
| Lost In Space | Aimee Mann - 100% | Aimee Mann - 100% | PA 1-105-734 **11/7/02 | SuperEgo Records SR 318-932 **11/7/02 | Aimee Mann "Lost In Space" SuperEgo Records #SR 007 Released: August 27, 2002 |
| Momentum | Aimee Mann - 100% | Aimee Mann - 100% | PAu 1-921-671 10/25/94 PA Pending PA 1-027-093 5/25/00 (arrangement) (CA) PA 1-068-284/11-5-01 | SuperEgo Records SR Pending | Aimee Mann Magnolia soundtrack album Warner Bros. Records #4/2-47583 Released: December 7, 1999 In Archord/"11.21 Gigwatts"/In Achord/ CD9-01 |
| Moth, The | Aimee Mann - 100% | Aimee Mann - 100% | PA 1-105-733 **11/7/02 | SuperEgo Records SR 318-932 **11/7/02 | Aimee Mann  "Lost In Space" SuperEgo Records #SR 007 Released:  August 27, 2002 |
| Mr. Harris | Aimee Mann - 100% | Aimee Mann - 100% | PA 620-547 6/14/93 | | Aimee Mann Whatever Image Recording Co. #72787-21017-2/4 Released: 5/11/93 |

A-9

40696734.1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Nightmare Girl | Aimee Mann – 33.33%<br>Jon Brion – 33.33%<br>Michael Penn – 33.33% | Aimee Mann – 33.33%<br>You Can't Take It With You – 33.33%<br>Bucket Brigade Songs – 33.33% | PA 1-105-719<br>**11/7/02 | SuperEgo Records<br>SR 318-922<br>**11/7/02 | Aimee Mann – Bonus CD Sampler<br>SuperEgo Records #SE 008<br>Released: August 27, 2002 |
| Nothing is Good Enough | Aimee Mann - 100% | Aimee Mann - 100% | PA 985-495/1-27-00<br>PA 1-027-093<br>5/25/00 (arrangement)<br>(CA) PA 1-068-284/11-5-01 | SuperEgo Records<br>SR Pending | Aimee Mann, "Bachelor No. 2", SuperEgo, #SE001 (Limited Edition) August 2, 1999 & #SE 002 May 2, 2000<br><br>Aimee Mann / "Magnolia" soundtrack Warner Brothers Records #4/2-47583<br>Released: December 7, 1999 |
| Observatory | Aimee Mann – 50%<br>Glenn Tilbrook – 50% | Aimee Mann – 50%<br>EMI Virgin Music Ltd. (PRS) (admin. in the U.S. by EMI Virgin Music Inc. (ASCAP)) – 50% | | | Glenn Tilbrook / "The Incomplete Glenn Tilbrook"<br>Quixotic Records No. QUIXCD007<br>Released: May 28, 2001 (U.K.)<br>What Are Records? #60050<br>Released: August 28, 2001 (U.S.) |
| One | | | | SuperEgo Records<br>SR Pending | Aimee Mann / "Magnolia" soundtrack Warner Brothers Records #4/2-47583<br>Released: December 7, 1999 |
| Only Kidding | Aimee Mann - 100% | Aimee Mann - 100% | PAu 1-921-672<br>10/25/94 | | |
| Only One (The) | Aimee Mann - 100% | Aimee Mann - 100% | PAu 1-921-673<br>10/25/94 | | |

A-10

40696734.1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Other End, The (Of The Telescope) | Aimee Mann – 50% Declan MacManus p/k/a Elvis Costello - 50% | Aimee Mann – 50% Plangent Visions – 50% | PA 415-239 03/03/89 | | 'Til Tuesday Everything's Different Now Epic Records #OE/OE57/EK 44041 Released: Oct. 19, 1988<br><br>Coming Up Close: A Retrospective Epic/Legacy #EK 64944 Released: Sept. 11, 1996<br><br>Elvis Costello & The Attractions All This Useless Beauty Warner Bros. Records #42-46198 Released: May 14, 1996<br><br>Costello & Nieve Warner Bros. Records #2246469 (single) Released: Dec. 3, 1996<br><br>Imago Sampler CD 1993 (Aimee Mann) Bespoke Songs, Lost Dogs, D Rhino Records - R2-72273 June 17, 1998<br><br>Elvis Costello "All This Useless Beauty" Warner Special Products #R2 74294 August 21, 2001 |
| Far For The Course | Aimee Mann - 100% | Aimee Mann - 100% | PA 764-139 3/26/96 | | Aimee Mann I'm With Stupid Geffen Records DGCC/D-24951 Release Date: October 1995 (UK); January 1996 (U.S.) |
| Pavlov's Bell | Aimee Mann – 100% | Aimee Mann – 100% | PA 1-105-735 **11/7/02 | SuperEgo Records SR 31/9-932 **11/7/02 | Aimee Mann "Lost In Space" SuperEgo Records #SE 007 Released: August 27, 2002 Aimee Mann/"Buffy the Vampire Slayer: Radio Sunnydale"/Virgin Records/CD #957509-30-03 Aimee Mann/"Buffy the Vampire Slayer: Radio Sunnydale"/EMI/Virgin Music Canada/CD #E2-94303B//10-7-03 (Canada) |

A-11

40966734.1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Pay As You Go | Aimee Mann – 100% | Aimee Mann - 100% | | SuperEgo Records | unreleased |
| Put Me On Top | Aimee Mann - 100% | Aimee Mann - 100% | PA 620-543 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72787-21017-2/4 Released: 5/11/93 |
| Put On Some Speed | Aimee Mann – 50% Jon Brion –50% | Aimee Mann – 50% You Can't Take It With You - 50% | PAu 1-921-669 10/25/94 | | |
| Ray | Aimee Mann - 100% | Aimee Mann - 100% | PA 764-142 3/26/96 | | Aimee Mann I'm With Stupid Geffen Records DGCOD-24951 Release Date: October 1995 (UK); January 1996 (U.S.) CD single (International) That's Just What You Are GEFDM 22125 3/4/96 Grooves, Vol. II compilation Sony Music March 1996 |
| Ready Steady Go | Aimee Mann – 100% | Aimee Mann - 100% | | SuperEgo Records | unreleased |
| Real Bad News | Aimee Mann – 100% | Aimee Mann - 100% | PA 1-105-737 **11/7/02 | SuperEgo Records SR 318-932 **11/7/02 | Aimee Mann "Lost In Space" SuperEgo Records #SE 007 Released: August 27, 2002 |
| Red Vines | Aimee Mann- 100% | Aimee Mann 100% | PA 985-494 1-27-00 | SuperEgo Records SR Pending | Aimee Mann, "Bachelor No. 2", SuperEgo, #SE001 (Limited Edition) August 2, 1999 & #SE 002 May 2, 2000 |
| Rip In Heaven | Aimee Mann – 50% Kit Hain – 50% | Aimee Mann – 50% MCA Music Publishing – 25% Unicity Music, Inc. (adm. By MCA) - 12.5% Kitus Corp. (adm. by MCA) – 12.5% | PA 415-242 03/03/89 | | 'Til Tuesday Everything's Different Now Epic Records #OE/OET/EK 44041 Released: Oct. 19, 1988

All About Love Sony Special Products #A26466  1997 |

A-12

40596734.1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Satellite | Aimee Mann - 100% | Aimee Mann- 100% | PA 985-492 1-27-00 | SuperEgo Records SR Pending | Aimee Mann, "Bachelor No. 2", SuperEgo, #SE001 (Limited Edition) August 2, 1999 & #SE 002 May 2, 2000<br>Various/Starbucks Songs Of The Siren March 2000 Universal #314549662 |
| Save Me | Aimee Mann - 100% | Aimee Mann - 100% | PA Pending PA 996-370 3-31-00 (arrangement) (CA) PA 1-068-282/11-5-01 | SuperEgo Records SR Pending | Motion Picture Magnolia New Line Cinema 1999<br>Aimee Mann Magnolia soundtrack album Warner Bros. Records#4/2-47583 Released: December 7, 1999<br>The Westwind Ensemble/ "The Best Of Movie Music '99" Brentwood Communications #BCCD/MC 567 Released: September 15, 2000<br>Various/Grammy Nominees 2001 Capitol Records<br>Aimee Mann Grammy Nominees 2001 EMI Recorded Music #31520-2/4 Released: February 6, 2001 |
| Say Anything | Aimee Mann - 50% Jon Brion - 50% | Aimee Mann - 50% Lilyse Music - 25% You Can't Take It With You (admin. by Lilyse Music) - 25% | PA 620-545 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72787-21017-2/4 Released: 5/11/93 |
| Scotty (earlier version of "Red Vines") | Aimee Mann – 100% | Aimee Mann – 100% | | SuperEgo Records | unreleased |
| Shut Up | Aimee Mann - 100% | Aimee Mann - 100% | PAu 1-921-674 10/25/94 | | |

A-13

Page 41

46696734.1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Starvin' To Death | Aimee Mann – 50% Peter Wolf – 50% | Aimee Mann – 50% Almo Music Corp. o/b/o Pal-Park Music – 50% | PA 801-194 10/4/96 | | Peter Wolf / "Long Line" Warner Reprise #46199-2/4   May 14, 1996 |
| Stupid Thing | Aimee Mann – 50% Jon Brion – 50% | Aimee Mann – 50% Lilyse Music – 25% You Can't Take It With You (admin. by Lilyse Music) – 25% | PA 620-544 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72787-21017-2/4 Released: 5/11/93 |
| Sugarcoated | Aimee Mann – 50% Bernard Butler – 50% | Aimee Mann – 50% Polygram Music Publishing Ltd. (admin. In U.S. by Songs of Polygram International) – 50% | PA 764-134 3/26/96 | | Aimee Mann I'm With Stupid Geffen Records DGCC/D-24951 Release Date: October 1995 (UK); January 1996 (U.S.) |
| Superball | Aimee Mann – 100% | Aimee Mann- 100% | PA 764-136 3/26/96 | | Aimee Mann I'm With Stupid Geffen Records DGCC/D-24951 Release Date: October 1995 (UK); January 1996 (U.S.) |
| Susan | Aimee Mann- 100% | Aimee Mann- 100% | PAu 2-453-621 2/7/00 | SuperEgo Records SR Pending | Aimee Mann Bachelor No. 2 SuperEgo Records SE002 May 2, 2000 |
| Take It Back | Aimee Mann – 50% Jon Brion – 50% | Aimee Mann – 50% Lilyse Music – 25% You Can't Take It With You (admin. by Lilyse Music) – 25% | PA 628-902 6/14/93 | | Aimee Mann Imago Recording Co. CD Single: 72787-25032-2 Released: 5/31/93 Single: 72787-25056-2/4 Released: 11/22/93 |

A-14

4069724.1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| That's Just What You Are | Aimee Mann - 50% Jon Brion - 50% | Aimee Mann - 50% You Can't Take It With You - 50% | PAu 1-921-667 10/25/94 PA 737-616 12/29/94 | | Melrose Place Soundtrack LP Giant Records #9 24577-2/4 October 18, 1994 CD/Single: 72787-25086-2/4 September 23, 1994 Aimee Mann - I'm With Stupid Geffen #DGCCD-24551   October 1995 (UK); January 1996 (U.S.) Coca Cola promo sampler BMG Direct 1995 CD single (International) That's Just What You Are GEFDM 22125 CD single (UK) Long Shot GEFDM 22133 3/96 |
| This Is How It Goes | Aimee Mann - 100% | Aimee Mann - 100% | PA 1-105-736 ªª11/7/02 | SuperEgo Records SR 318-992 ªª11/7/02 | Aimee Mann "Lost In Space" SuperEgo Records #SE 007 Released: August 27, 2002 |
| Today's The Day | Aimee Mann - 100% | Aimee Mann - 100% | PA 1-105-729 ªª11/7/02 | SuperEgo Records SR 318-952 ªª11/7/02 | Aimee Mann  "Lost In Space" SuperEgo Records #SE 007 Released:  August 27, 2002 Starbucks "Hear Music, Volume 9" compilation CD #S413521-81909 Released: April 22, 2003 |
| Truth On My Side | Aimee Mann - 100% | Aimee Mann - 100% | PAu 1-921-668 10/25/94 | | |
| Two of Us | | Aimee Mann - 100% | SR Pending | SuperEgo Records | Aimee Mann and Michael Penn (various) "I Am Sam" soundtrack album/V2 Records/#27119/1-8-02 |
| Way Back When | Aimee Mann - 100% | Aimee Mann - 100% | PA 620-551 6/14/93 | | Aimee Mann Whatever Imago Recording Co. #72787-21017-2/4 Released: 5/11/93 Single: 72787-25056-2/4 Released: 11/22/93 |

A-15

406967341

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| Why Must I? | Aimee Mann - 100% | Aimee Mann – 100% | PA 415-236 03/03/89 | | Til Tuesday Everything's Different Now Epic Records #0EP0ET/EK 44041 Released: Oct. 19, 1988<br><br>Coming Up Close: A Retrospective Epic/Legacy #EK 64944 Released: Sept. 11, 1996 |
| Wise Up | Aimee Mann - 100% | Aimee Mann - 100% | PA 828-653 1/17/97 PA 1-027-093 (arrangement) (CA) PA 1-068-284/11-5-01 | Master owned by Geffen Records | Jerry Maguire Soundtrack LP Epic #67910 Dec. 10, 1996 Aimee Mann/Sony/(DPDa)/record #067910<br><br>Motion Picture Magnolia New Line Cinema 1999 and Magnolia soundtrack album Warner Bros. Records #4/2-47583 Released: December 7, 1999 |
| Wouldn't Go Out Of My Way | Aimee Mann – 50% Jon Brion – 50% | Aimee Mann – 50% You Can't Take It With You – 50% | | SuperEgo Records | unreleased |
| You Could Make a Killing | Aimee Mann - 100% | Aimee Mann 100% | PA 764-135 3/26/96 | | Aimee Mann I'm With Stupid Geffen Records DGCCD-24951 Release Date: October 1995 (UK; January 1996 (U.S.) CD single You Could Make A Killing GEFDM-22154 (Australia) 6/3/96 Aimee Mann/"Cruel Intentions Soundtrack Album"/EMI Music Canada/CD #V2-47178/3-2-99<br><br>Motion Picture Fall Fall Productions Dec. 1996<br><br>Live At The World Cafe Vol. 3 WXPN Radio 1997 |

A-16

40096734.1

| Title | Writer(s) | Publisher(s) | Copyright Info. | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| You Do | Aimee Mann - 100% | Aimee Mann - 100% | PA Pending PA 1-027-093 5/25/00 (arrangement) (CA) VA 1-068-284/11-5-01 | SuperEgo Records SR Pending | Aimee Mann Magnolia soundtrack album Warner Bros. Records #4/2-47583 Released: December 7, 1999<br><br>Motion Picture Magnolia New Line Cinema 1999<br><br>Aimee Mann Bachelor No. 2 SuperEgo Records SE002 May 2, 2000 |
| You're With Stupid Now | Aimee Mann - 100% | Aimee Mann - 100% | PA 764-140 3/26/96 | | Aimee Mann I'm With Stupid Geffen Records DGCCD-24951 Release Date: October 1995 (UK); January 1996 (U.S.) CD single (UK) Long Shot GEFDM 22133 3/96 Motion Picture Dream For An Insomniac Tribone Prods. 1996 |

A-17

40696734.1

Page 45



*(handwritten annotations):* Laurie, I'd like Aimee's memo or send this. Schedule A 10/1/12. Call me. You have questions, I'm me. Thanks!

## SCHEDULE "A"

### Aimee Mann (ASCAP)

| Title | Writer(s) | Publisher(s) | Copyright Info | Master Owner/ Copyright Info | Release Information |
|---|---|---|---|---|---|
| (Believed You Were) Lucky* | Aimee Mann – 50% Jules Shear – 50% | Aimee Mann – 50% Music Corp. of America, Inc. – 25% Juters Music Co. (adm. by MCA) – 25% | PA 410-428 10/18/88 | | 'Til Tuesday Everything's Different Now Epic Records #OE/FEK 44041 Released: Oct. 19, 1988 A-side single Epic #34/34T 08059-7 October 18, 1988 |
| | | | | | Coming Up Close: A Retrospective Epic/Legacy #EK 64944 Released: Sept. 11, 1996 |
| | | | | | 'Til Tuesday / various |
| | | | | | All About Love. Sony Special Products #A28466  1997 |
| All Over Now | Aimee Mann – 100% | Aimee Mann – 100% | PA 764-138 3/26/96 | | Aimee Mann I'm With Stupid Geffen Records DGCCD-24951 Release Date: October 1995 (UK); January 1996 (U.S.) |
| | | | | | Buy Product 2 Brief Encounters compilation Geffen 1995 |
| Amateur | Aimee Mann – 50% Jon Brion – 50% | Aimee Mann – 50% You Can't Take It With You – 50% | PA 764-137 3/26/96 | | Aimee Mann I'm With Stupid Geffen Records DGCCD-24951 Release Date: October 1995 (UK); January 1996 (U.S.) |
| | | | | | Motion Picture Picture Perfect 20th Century Fox 1997 Motion Picture Sliding Doors Miramax 1998 |
| Angels Never Call* | Aimee Mann – 100% | 'Til Tunes Associates – 100% | PA 306-104 10/24/86 | | 'Til Tuesday Welcome Home Epic Records #E 40314 Released: Sept. 24, 1986 |

A-1

# EXHIBIT C

## Wallake, Leslie

| | |
|---|---|
| **From:** | Wallake, Leslie |
| **Sent:** | Thursday, February 10, 2005 4:28 PM |
| **To:** | 'John Jones' |
| **Subject:** | RE: Aimee Mann Licensing |

Hi John,

The client has advised that they do not want to pursue an agreement with MusicNet at this time.

Best regards,

Leslie Wallake
Legal Assistant
Manatt, Phelps & Phillips
11355 West Olympic Blvd.
Los Angeles, CA  90064
Telephone (310) 312-4239
Fax (310) 312-4224

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail at lwallake@manatt.com or by telephone at (310) 312-4000, and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

**From:** John Jones [mailto:jjones@MusicNet.com]
**Sent:** Wednesday, February 02, 2005 7:45 AM
**To:** Wallake, Leslie
**Subject:** RE: Aimee Mann Licensing

Hi Leslie...

Thanks for getting back to me. Naturally I'm sensitive to the ROI issues. We don't currently offer advances on our deals. We have over 400,000 subscribers through our ongoing AOL relationship. In addition, we have a number of other key distribution relationships rolling out in the next few months. Among those, Aimee has been cited as one of the "favorite" artists of a high-level exec. So, having said that, I would like to get her solo work on board.

Best,

John

    -----Original Message-----
    **From:** Wallake, Leslie [mailto:lwallake@manatt.com]
    **Sent:** Thursday, January 27, 2005 7:50 PM
    **To:** John Jones
    **Subject:** RE: Aimee Mann Licensing

    Hi John,

2/10/2005

I still handle and I'll pull the file to see where we left off.  It may be that the client doesn't want legal time spent on this if too little money involved.  Was MusicNet offering an advance of any kind?

Best regards,

Leslie Wallake
Legal Assistant
Manatt, Phelps & Phillips
11355 West Olympic Blvd.
Los Angeles, CA  90064
Telephone (310) 312-4239
Fax (310) 312-4224

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail at lwallake@manatt.com or by telephone at (310) 312-4000, and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

---

**From:** John Jones [mailto:jjones@MusicNet.com]
**Sent:** Thursday, January 27, 2005 2:48 PM
**To:** Wallake, Leslie
**Subject:** Aimee Mann Licensing

Hi Leslie...

Hope you're well...

It's been a while since we last spoke, but I want to circle back on the licensing of the Aimee Mann catalog.

Are you still overseeing that initiative, and if not, could you please direct me to whoever might be?

Thanks,

John.

John Jones
VP Programming, Artist and Label Relations
**MusicNet Inc.**
220 West 42nd Street, 16th Floor
New York, NY 10036
v 212.704.9825
f 212.704.9977
c 917.860.5060
e jjones@musicnet.com

2/10/2005

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George King and the assigned discovery Magistrate Judge is Frederick F. Mumm.

The case number on all documents filed with the Court should read as follows:

## CV13- 5269 GHK (FFMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Henry Gradstein (#89747); Robert E. Allen (#66589)
Maryann R. Marzano (# 96867)
GRADSTEIN & MARZANO, P.C.
6310 San Vicente Blvd., Suite 510
Los Angeles, CA 90048
Tel. (323) 776-3100; Fax (323) 931-4990

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Aimee Mann, an individual, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV13- 5269   bthc (FFNx) |
| v. | |
| MediaNet Digital, Inc., a Delaware corporation; and DOES 1 through 10, | SUMMONS |
| DEFENDANT(S). | |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Maryann R. Marzano, Esq._____, whose address is _Gradstein & Marzano, P.C. 6310 San Vicente Blvd., Suite 510, Los Angeles, CA 90048_. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

JUL 2 2 2013

Clerk, U.S. District Court

JULIE PRADO

Dated: _____     By: _____
                                              Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| AIMEE MANN, an individual | MEDIANET DIGITAL, INC., a Delaware corporation; and DOES 1 through 10. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) |
|---|---|
| Henry Gradstein (#89747); Maryann R. Marzano (#96867); Robert E. Allen (#166589) Gradstein & Marzano, P.C. 6310 San Vicente Blvd., Suite 510, Los Angeles, CA 90048 Tel. (323) 776-3100; Fax (323) 931-4990 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ 17,850,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Copyright Infringement of Plaintiff's rights in the copyright in and to various musical compositions. 17 U.S.C. § 504.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY: Case Number: CV13- 5269

**AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | Delaware, New York, Washington, Michigan |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: July 19, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |